IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* BERNARD HENNEBERGER,<br><br>Plaintiffs,<br><br>v.<br><br>TICOM GEOMATICS, INC.,<br><br>Defendant. | No. 1:17-cv-670 (AJT-IDD) |

<u>MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO DISMISS</u>

The United States moves to dismiss this action brought by Bernard Henneberger, "Relator," under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733. Pursuant to Section 3730(c)(2)(A), the United States, as the true party in interest in a *qui tam* action, may seek dismissal of an action after the United States notifies the relator of its intent to do so by the filing of a motion. 31 U.S.C. § 3730(c)(2)(A). *See generally American Civil Liberties Union v. Holder*, 673 F.3d 245, 250-51 (4th Cir. 2011).

Relator, a former employee of Defendant Ticom Geomatics ("Ticom" or Defendant"), alleges that Defendant misrepresented the accuracy of geolocation software that it has sold to the United States Government. Following its investigation of the *qui tam* allegations, the Government determined that Relator lacks specific knowledge of exactly what representations were made, when they were made, to whom they were made, and precisely how they are false. Indeed, while Relator lists nineteen contracts the Government has awarded Ticom over the last fourteen years, he is unable to identify which of these contracts, if any, are implicated by his

1

allegations. Nearly all of Ticom's contracts were awarded after Relator left his employment at Ticom—rendering his knowledge of what Ticom was required to provide, any representations made to the Government, or what the Government knew about the goods or services that Ticom provided, limited at best. As a result of the over breadth of Relator's allegations, further litigation of this action will inevitably result in a significant cost and burden to the Government, as both Relator and Defendant will likely seek extensive discovery from the Government to prove or disprove Relator's unspecific claims.

Accordingly, in an effort to protect the Government's resources from further prosecution of Relator's claim, the United States respectfully requests that this action be dismissed.

## PROCEDURAL POSTURE

Relator filed this *qui tam* complaint on June 14, 2017. Dkt. No. 1. After conducting its own investigation of Relator's allegations, the Government declined intervention on August 9, 2018. Dkt. No. 8.

Counsel for Relator withdrew from the case by Order entered January 15, 2019, (Dkt. No. 15), after which Relator sought to proceed pro se (Dkt. No. 16). The United States filed a Statement of Interest explaining that Relator is not permitted to pursue an action under the FCA on behalf of the Government pro se (Dkt. No. 18), and Defendant filed a motion to dismiss on the ground of Relator's pro se status (Dkt. No. 21). Following a hearing on defendant's motion, the Court gave Relator until April 12 in which to obtain counsel. Dkt. No. 31. On April 12, new counsel for Relator entered their appearance and thereafter expressed to counsel for the Government that they intended to continue the lawsuit on behalf of the Government.

ARGUMENT

I.   The False Claims Act Affords the United States Extensive Control Over *Qui Tam* Suits.

The *qui tam* provisions of the FCA permit an individual to bring suits in the name of the Government. However, as the real party in interest in all FCA actions, the statute gives the Government extensive control over the action. For example, the FCA requires that a Relator must file his complaint under seal and serve it, along with a written disclosure of all material evidence and information that Relator possesses. 31 U.S.C. § 3730(b). The Government is afforded at least 60 days to investigate the allegations, and then may choose to intervene and proceed with the action or decline intervention. *Id*.

The right of the Relator to continue with the action following the Government's declination declination, is deemed merely a limited assignment of the Government's FCA damages cause of action. *See Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000).[1] It is neither absolute nor irrevocable as made clear by Section 3730(c). Rather, the statue imposes several limitations on the Relator—and confers a number of rights on the United States—to ensure that the Government retains ultimate control over the action. Among these provisions are that the Relator may not dismiss the action without permission of the Attorney General. 31 U.S.C. § 3730(b)(1). The Government may also seek a stay of the *qui tam* action if its prosecution would interfere with the Government's investigation or prosecution of another matter. *Id*. at § 3730(c)(4). The Government, upon a showing of good

---

1 Indeed, the FCA makes actionable civil fraud where the "United States Government" is the victim. 31 U.S.C. § 3730(b). Thus, the Relator is not seeking to vindicate his own harm, but rather, the interests of the United States. *See United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 912 (4th Cir. 2013) ("In the context of the FCA, however, it is the government, not the private-citizen relator, that has been injured by the defendant's fraud.").

3

cause, may also intervene at a later date. *Id*. at § 3730(c)(3). Further, the Government has the power to settle the action, over Relator's objections, provided that the proposed resolution is fair, adequate, and a reasonable. *Id*. at § 3730(c)(2)(B).

Importantly, among the rights afforded to the Government, the FCA expressly permits the United States to dismiss a *qui tam* suit over the Relator's objection:

> The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion.

31 U.S.C. § 3730(c)(2)(A). This provision applies equally to declined and intervened claims. *Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 932-33 (10th Cir. 2005); *Swift v. United States*, 318 F.3d 250, 251 (D.C. Cir. 2003); *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1145 (9th Cir. 1998).

II.     Standard of Review.

The Government has broad authority to dismiss a *qui tam*. While the Fourth Circuit has yet to determine the standard of review of a motion to dismiss brought under Section 3730(c)(2)(A), other circuits have addressed this question, articulating two, highly deferential standards governing the Government's dismissal of *qui tam* actions.

The D.C. Circuit has held that the United States has "an unfettered right to dismiss a *qui tam*" action. *Swift v. United States*, 318 F.3d 250, 252 (D.C. Cir. 2003). In *Sequoia Orange*, the Ninth Circuit applied a slightly higher test, requiring a "rational relationship" for dismissal, while recognizing that the United States has broad prosecutorial discretion to dismiss even meritorious *qui tam* actions, provided that the basis for dismissal was rationally related to a legitimate government interest. *See Sequoia Orange*, 151 F.3d at 1145. The Tenth Circuit has

4

further expounded on *Sequoia Orange*, holding that "it is enough that there are plausible, or arguable reasons supporting the agency decision [to move for dismissal]." *Ridenour*, 397 F.3d at 937.

While both standards are highly deferential to the Government's statutory right to dismiss *qui tam* actions brought in its name, the more recent holding in *Swift* is more consistent with the letter of Section 3730(c)(2)(A), as well as the well-established degree of control the FCA affords the United States in its exercise of prosecutorial discretion. Irrespective of which standard this Court applies, dismissal of this action is justified.

A. <u>The Government Has an Unfettered Right to Dismiss a Declined *Qui Tam*</u>.

As explained above, the FCA vests extensive authority in the Executive Branch to pursue or decline *qui tam* actions. This broad power extends to control over the litigation of *qui tam* actions in which the Government declines intervention. Recognizing the basic tenets of the separation of powers, the *Swift* court found that the Government's right to dismiss an action under Section 3703(c)(2)(A), which is ultimately a decision not to prosecute, is a decision of the Executive Branch that was not reviewable by the judiciary. *Swift*, 318 F.3d at 252. Further, the court noted that such a reading of the statute is consistent with Federal Rule of Civil Procedure 41(a)(1)(i), which "permits a plaintiff to dismiss a civil action 'without order of the court' if the adverse party has not yet filed an answer or a motion for summary judgment" without judicial review. *Id*.

Section 3730(c)(2)(A) provides no standard of review of such a dismissal. *See United States ex rel. Levine v. Avnet, Inc.*, 2015 WL 1499519 (E.D. Ky. April 1, 2015) (noting that the plain language of Section 3730(c)(2)(A) does not require the Government to make any showing

in support of a motion to dismiss); *see also United States ex rel. Maldonado v. Ball Homes, LLC*, 2018 WL 3213614, at *4 (E.D. Ky. June 29, 2018). The absence of a particular standard of review for the dismissal of *qui tam* actions is especially notable when comparing Section 3730(c)(2)(A) with Section 3730(c)(2)(B), which provides that the Government may settle a *qui tam* over the objection of a Relator "if the court determines, after a hearing, *that the proposed settlement is fair, adequate, and reasonable, under all the circumstances*." (emphasis added). No such requirement is imposed on the Government's dismissal authority. Similarly, Section 3730(c)(2)(A) stands in stark contrast with Section 3730(b)(1) which governs the circumstances under which a Relator may dismiss a *qui tam*, and restricts a Relator's right to dismiss a *qui tam*, requiring that "the court and the Attorney General give written consent to the dismissal and their reasons for consenting." Again, no such limitation applies to the Government's dismissal authority under Section 3730(c)(2)(A).

    B.  <u>Dismissal is Also Warranted Under the "Rational Relationship" Test</u>.

  Though the Government contends that the unfettered discretion standard set forth by *Swift* is the correct test to apply when considering a motion to dismiss brought under Section 3730(c)(2)(A), the Government's motion to dismiss also should be granted under the rational relationship test outlined in *Sequoia Orange*. The rational relationship test requires only that the Government (1) identify a "valid government purpose" for dismissing the case and (2) show a "rational relation between dismissal and accomplishment of that purpose." *Sequoia Orange*, 151 F.3d at 1145 (quotations omitted). If the Government satisfies both prongs of the test, the burden shifts to the Relator to show that dismissal is fraudulent, arbitrary and capricious, or illegal. *Id*.

  Much like the *Swift* court, the *Sequoia Orange* court noted that the Government has broad

discretion in electing which cases to prosecute, and as such, noted that when hearing a motion to dismiss a *qui tam* brought by the United States, courts should "respect[] the Executive Branch's prosecutorial authority by requiring no greater justification of the dismissal of the motion than is mandated by the Constitution itself." *Id*. at 1146.

The prosecution of Relator's *qui tam* would place a significant burden on the Government not only in the continued monitoring of the litigation, but in responding to discovery requests, in the form of *Touhy* requests,[2] from either party. Relator has identified at least nineteen Government contracts—from different Department of Defense contracting commands[3]—with the United States Navy and the United States Special Operations Command. Inevitably, discovery will include requests for production of Government documents, which could include not simply the nineteen contracts themselves, but correspondence between Ticom and the Government, or communications internal to the Government regarding Ticom's performance or representations. Production of these documents would expend significant Government resources to search for, collect, review, and produce documents that may be

---

2 While party discovery in a declined qui tam against the United States is inapplicable (*see United States ex rel. Eisenstein v. City of New York, New York*, 556 U.S. 928 (2009)(while the United States is the real party in interest, the United States is not a "party" otherwise), discovery is obtained against the Government via requests pursuant to 5 U.S.C. § 301. *United States ex rel. Lamers v. City of Green Bay, Wis*., 924 F. Supp. 96, 98 (E.D. Wis. 1996); *see United States ex rel. Searle v. DRS C3 & Aviation Co.*, 2015 WL 6691973 at *1 n.1 (E.D. Va. Nov. 2, 2015), *aff'd*, 680 Fed. Appx. 163, 167 (4th Cir. 2017). Many agencies have promulgated so-called *Touhy* regulations regulating their employees' ability to respond to subpoenas for official information. These regulations typically provide a procedure for centralized agency decision making concerning how the agency will respond to a subpoena or other request for testimony or documents served on an agency employee, and provide a procedure by which a subpoenaing litigant may obtain an agency decision. The validity of such regulations was considered and upheld by the Supreme Court in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

3 *See* Compl. ¶ 17.

requested by either Relator or Defendant. Further, given the FCA's requirement that any misrepresentation must be material to the Government, discovery will necessarily require oral testimony from Government witnesses, potentially calling upon witnesses from each of the nineteen contracts Relator has identified to simply determine whether a misrepresentation was made, and if so, what if any impact it had on the Government's decision making. This is a weighty burden on the Government, particularly in a case that it decided not to pursue on its own behalf after evaluating Relator's allegations in the pre-intervention phase, and given the absence of personal knowledge by the Relator regarding the nature of the contracts and the negotiations he alleges were obtained through false representations.

Courts have routinely acknowledged that preservation of Government resources is a valid Government purpose for dismissing a *qui tam*. *See Sequoia Orange*, 151 F.3d at 1146 (holding that the district court "properly noted that the government can legitimately consider the burden imposed by taxpayers by its litigation, and that, even if the relators were to litigate the FCA claims, the government would continue to incur internal staff costs"); *United States ex rel. Davis v. Hennepin County*, 2019 WL 608848 (D. Minn. Feb. 3, 2019) (adopting *Swift* with in depth discussion); *United States ex rel. Stovall v. Webster Univ.*, 2018 WL 3756888, at *3 (D.S.C. Aug. 8, 2018) (holding that Government's "interest in preserving scarce resources by avoiding the time and expense necessary to monitor [the] action" was a valid Government purpose for dismissal); *United States ex rel. Levine v. Avnet, Inc.* 2015 WL 42359 (E.D. Ky. April 1, 2015) (holding that dismissal of *qui tam* complaint "will further [the government's] interest in preserving scarce resources" that would otherwise be spent "monitoring [relator's] action"); *United States ex rel. Nicholson v. Spigelman*, 2011 WL 2683161, at *2 (N.D. Ill. July 8, 2011)

8

(noting that the likelihood that parties "would seek discovery from the government and the government's burden in monitoring the case and filing briefs on issues of law likely to arise in the suit" was sufficient basis to grant Government's motion to dismiss); *Nausti ex rel. United States v. Savage Farms, Inc.* 2014 WL 1327015, at * 11 (D. Mass. March 27, 2014) (granting Government's motion to dismiss due in part to the Government's legitimate concerns regarding the cost of monitoring the litigation, responding to discovery requests, and clarifying Relator's misstatements of law).

Accordingly, dismissal of the litigation is required to address the Government's valid concerns in conserving its limited resources that would be expended in litigating this action.

## CONCLUSION

For the foregoing reasons, the United States requests that the Court grant the Motion.

DATED April 30, 2019.

                                         Respectfully submitted,

                                         G. ZACHARY TERWILLIGER
                                         UNITED STATES ATTORNEY

By:

                                         /s/ Christine N. Roushdy
                                         CHRISTINE N. ROUSHDY
                                         GERARD MENE
                                         Assistant United States Attorneys
                                         Counsel for the United States
                                         2100 Jamieson Avenue
                                         Alexandria, VA 22314
                                         Tel: (703) 299-3911/3777
                                         Fax: (703) 299-3983
                                         Christine.Roushdy@usdoj.gov
                                         Gerard.Mene@usdoj.gov